John Neil Stephenson (SBN 12497)
STEPHENSON LAW, PLLC
1770 Verdi Vista Court
Reno, Nevada 89523
Tel: 510-502-2347
Fax: 775-403-1773
Email: johnstephensonlaw@gmail.com
Web: stephensonfirm.com
*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA (RENO)

| | |
|---|---|
| **PRIYA DEY-SARKAR,** | **VERIFIED COMPLAINT** |
| Plaintiff, | |
| **DANIEL ADESINA, in his individual capacity;** | |
| **STEPHANIE MULLEN, in her individual capacity; and** | |
| **THE PUBLIC UTILITIES COMISSION OF NEVADA, a governmental entity.** | |
| Defendants. | |

///

///

///

///

///

///

///

///

1

## I. PARTIES

1. Plaintiff Priya Dey-Sarkar is an adult woman of Indian decent (Asia), citizen and domiciliary of the State of Texas, and former senior gas engineer with NV Energy, a subsidiary of Berkshire Hathaway.

2. Defendant Daniel Adesina is an adult male, citizen and domiciliary of the State of Nevada, and a gas pipeline engineer with Defendant the Public Utilities Commission of Nevada ("PUCN").

3. Defendant Stephanie Mullen is the executive director of the PUCN. She serves as its chief financial officer and directs daily operations, including budgets, administration and human resources as well as purchases and contracts entered into by the PUCN.

4. Defendant PUCN is a regulatory agency that ensures investor-owned utilities comply with laws enacted by the State of Nevada Legislature and the employer of Defendants Adesina and Mullen.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 42 U.S.C. §§1983 and 1988.

6. Additionally, diversity jurisdiction exists pursuant to 28 U.S.C. §1332 as Plaintiff Dey-Sarkar is a citizen of the State of Texas whereas Defendants Adesina, Mullen, and PUCN are citizens of the State of Nevada.

7. Supplemental jurisdiction exists over Plaintiff Dey-Sarkar's causes of action arising under Nevada law under 28 U.S.C. §1367.

2

8. Venue lies in the United States District Court for the District of Nevada, Reno Branch, pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to Plaintiff's claims occurred in and around Washoe County, Nevada, and Defendants are citizens of, and domiciled in, the State of Nevada.

## III. FACTS

### A. Sexual and Racial Harassment by Mr. Adesina

9. The unlawful and unconstitutional practices alleged in this Verified Complaint occurred in Washoe County, State of Nevada.

10. On October 28, 2021, Ms. Dey-Sarkar was sexually and racially harassed by Mr. Adesina during a PUCN investigation at a NV Energy property. For over and hour and a half, Mr. Adesina asked Ms. Dey-Sarkar invasive, personal questions and made inappropriate comments about her appearance, nationality, marital status, parental status, work history, personal life, etc.

11. Mr. Adesina's invasive, personal questions and inappropriate comments including, but not limited to:

- Where are you from, tell me your job history and how long you were there?
- Why did you not apply for Jay's job?
- Do you have children?
- Why don't you have children? You need to have children. . .
- Are you married, why aren't you married?
- What is your future plan for marriage?
- You are clearly an Americanized immigrant that is not living like an immigrant child, you are not fitting the mold of what you are supposed to be doing as a good daughter (guess I'm not obedient?)
- You are not practical. . . .
- You have a pretty face. . . . etc etc
- And worse and more comments. . . .

///

3

12. Mr. Adesina shamed Ms. Dey-Sarkar about her personal life choices – being unmarried and without children. Mr. Adesina accused (incorrectly) Ms. Dey-Sarkar of being divorced and suggested that as the reason for her relocation to Reno. Adesina told her that she was very out of place in life and society as a female. He asked, over ten times, why Ms. Dey-Sarkar was not married and had no children. He also repeatedly asked, "Seriously, what is your plan? What is your plan for having children and getting married, as you cannot be in society like this?" Ms. Dey-Sarkar replied that her parents worked hard to give her the freedom to decide her life and Adesina responded that she was not representing her culture or her parents well and that she was very impractical and spoiled.

13. Mr. Adesina for approximately 2 or more hours, interrogated Ms. Dey-Sarkar on several personal matters, including whether or not her female reproductive organs were properly functioning, and implied that they should be checked out if not already by an OB-GYN, in an interrogatory style.

14. The next day, on October 29, 2021, Ms. Dey-Sarkar emailed her supervisors, Scott Turner, and Macy Campbell, manager of gas compliance and operations, to report this harassment.

15. Mr. Turner forwarded this report to Jesse Murray, vice president of NV Energy, who then requested assistance from Brandon Barkhuff and Jennifer Oswald in legal and human resources.

16. NV Energy conducted an investigation, substantiated Ms. Dey-Sarkar's harassment claim, and concluded in a letter, dated November 4, 2021, from Cyndle Bell, Senior Human Resource Business Partner, to Cyndi Divsalar, Director, Employee Relations, Payroll and Staffing that:

> The Company's Discrimination and Harassment policy prohibits harassment of employees by any individual either at the workplace or during the course of an employee's work. Adesina's invasive, inappropriate comments toward Dey-Sarkar were gender and racial-based, which constitutes harassment under Company policy.
>
> It is recommended that the PUCN is contacted and Adesina restricted from future site visits to NV Energy

Exhibit 1.

17. NV Energy then banned Mr. Adesina from its properties. On November 17, 2022, Brandon M. Barkhuff, general counsel for NV Energy, wrote Defendant Mullen and Garret Weir, general counsel for PUCN, and advised:

> NV Energy promptly investigated this complaint [by Ms. Dey-Sarkar] and found that Mr. Adesina acted inappropriately and unprofessionally in his interactions with our employee. . . .
>
> As a result of NV Energy's investigation, NV Energy hereby prohibits Mr. Adesina from entering any sites owned, controlled, or occupied by NV Energy, and further prohibits Mr. Adesina from communicating or interacting in any way with NV Energy employees. NV Energy expects the PUCN to honor this request and immediately remove Mr. Adesina from performing any duties related to NV Energy business. If this request is not honored, NV Energy will move forward with seeking a temporary protective order for workplace harassment barring Mr. Adesina from working further with NV Energy.

Exhibit 2.

**B.   Notice - Prior Reports of Inappropriate Behavior by Mr. Adesina**

18. Prior to sexually and racially harassing Ms. Dey-Sarkar, Mr. Adesina had harassed and/or abused other NV Energy employees. NV Energy confirms in its investigation report:

> Burnette replied that Jay Wiggins had to report issues with him in the past and recommended that Dey-Sarkar report her concerns.

Exhibit 1, p. 2.

5

19. PUCN was on notice of Mr. Adesina's dangerous properties yet continued to allow him to work thereby deliberately and unnecessarily putting Ms. Dey-Sarkar at risk and in harms way.

**C.  Retaliation**

20. From about November 2021 to April 2022, PUCN, through its executive director Ms. Mullen, retaliated against Ms. Dey-Sarkar for speaking out about Mr. Adesina's sexual and racial harassment by increasing its scrutiny of NV Energy's pipeline facilities; issuing notices of probable violation; and threatening civil litigation at an intensified rate.

21. In December 2021, due at least in part to the heightened scrutiny and regulatory pressure, Ms. Dey-Sarkar's supervisor, Scott Turner, resigned.  Prior to that, she reported to Jay Wiggins and then following Mr. Turner's resignation, she reported to Mr. Jesse Murray, Vice President of the Gas Division.  Ms. Dey-Sarkar, Mr. Turner, Mr. Murray, and Mr. Wiggins had positive and highly productive relationships.

22. Mr. Turner, voiced repeated concerns about retaliation from PUCN and Mr. Adesina in various emails dated, December 27, 2021, including the following:

> I do have some concerns about it getting back to Daniel about who has filed the complaints (both individuals). I'm not confident in Paul's ability to not let Daniel know.
>
> Also we don't know how Daniel will respond, after the incident with Priya he 'friended me' on a professional social networking site. I have since removed that after becoming aware of the situation, but it is very coincidental and to me shows further evidence of inappropriateness.
>
> Lastly, I do have some on-going concerns with Paul retaliating. I think he thinks it is coming from me though, so maybe it will get better after I am no longer with the company. I think Macy (& Jesse) are going to restart the relationship as it has deteriorated recently.

6

Exhibit 3, p. 2.

23. PUCN, through its principal Ms. Mullen and/her subordinates, thereafter conspired with NV Energy, through its principal President and Chief Executive Officer Doug Cannon, to terminate Ms. Dey-Sarkar under the false pretense of poor employment performance on June 2, 2022, approximately six months after Ms. Dey-Sarkar spoke out, so to have Mr. Adesina reinstated on NV Energy properties without the concern of further improper acts of sexual and racial harassment.

**IV.   CAUSES OF ACTION**

**CLAIM NO. 1**
*42 U.S.C. §1983 - 14th Amendment Equal Protection*
*Against Defendant Adesina*

24. Mr. Adesina, under the color of law, sexually and racially harassed Ms. Dey-Sarkar, a woman of Indian (Asia) decent, while in the workplace during a governmental regulatory inspection at a NV Energy job site on October 28, 2021. *See* Exhibit 1.

25. Mr. Adesina is sued in his personal capacity.

26. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution protects Ms. Dey-Sarkar's right to be free from sexual harassment at the hands of Mr. Adesina, a public official, in the workplace.

27. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution proscribes any purposeful discrimination by state actors, such as Mr. Adesina, be it in the workplace or elsewhere, directed at an individual solely because of the individual's sex.

28. Mr. Adesina, a male inspector with PUCN, subjected Ms. Dey-Sarkar, a woman of Indian decent, to sexualized and racially targeted comments and unwanted physical advances.

29. Mr. Adesina's conduct denied Ms. Dey-Sarkar, because she is a woman, the right to perform her work as a senior gas engineer entrusted with helping to safely deliver gas services to the Northern Nevada community without being subjected to hostile racial and sexual harassment.

30. If Ms. Dey-Sarkar were a man, she would not have experienced this harassment in seeking to have Mr. Adesina conduct his inspection with integrity, professionalism, and concern for protecting the public safety, and this discrepancy fundamentally offends the equality and fairness principles embodied in the Equal Protection Clause.

31. Ms. Dey-Sarkar's right under the Equal Protection Clause to be free from sexual harassment by public officials, here Mr. Adesina, in the workplace was clearly established by prior Ninth Circuit case law prior to the inappropriate conduct that gives rise to this case on October 28, 2021. *See, e.g., Sampson v. County*, 974 F.3d 1012 (9th Cir. 2020) citing *Alaska v. EEOC*, 564 F.3d 1062, 1068-69 (9th Cir. 2009) (workplace).  Accordingly, he is not entitled to qualified immunity for his unconstitutional conduct.

32. Mr. Adesina's actions were reckless and malicious warranting punitive damages.

33. As a direct and proximate result of the foregoing Fourteenth Amendment violation, Ms. Dey-Sarkar has suffered damages, in an amount exceeding $75,000.00, to be proven at trial.

**CLAIM NO. 2**
*42 U.S.C. §1983 - First Amendment Retaliation*
*Against Defendant Mullen*

34. Ms. Dey-Sarkar engaged in an activity protected by the First Amendment to the United States Constitution when she reported to her supervisors Mr. Turner and Ms. Campbell

on October 29, 2021 that she had been sexually and racially harassed the previous day by Mr. Adesina.

35. NV Energy's general counsel, Mr. Barkhuff communicated this constitutionally protected activity to Ms. Mullen, a state actor, through a formal letter dated November 17, 2021. *See* Exhibit 2.

36. Ms. Mullen is sued in her personal capacity.

37. Ms. Mullen acted under the color of law when she, by and through her subordinates, exercised the authority given to them by the State of Nevada without justifiable cause to retaliate by:

> A. increasing scrutiny of NV Energy's pipeline facilities; issued notices of probable violation; and threatened civil litigation at an intensified rate.
>
> B. exerting heightened scrutiny and regulatory pressure upon NV Energy thereby causing, at least in part, Ms. Dey-Sarkar's supervisor, Mr. Turner, to resign.
>
> C. conspiring with NV Energy to terminate Ms. Dey-Sarkar under the false pretense of poor employment performance so to have Mr. Adesina reinstated on NV Energy properties without the concern for further complaints by Ms. Dey-Sarkar over improper acts of sexual and racial harassment.

38. Ms. Mullen's actions would chill a person of ordinary firmness from continuing to engage in the protected activity of reporting Mr. Adesina's sexual and racial harassment.

39. Ms. Dey-Sarkar's protected activity of reporting the sexual and racial harassment by Mr. Adesina was a substantial or motivating factor in Ms. Mullen's unconstitutional conduct.

40. Ms. Mullen's retaliatory animus was the "but for" cause of Ms. Dey-Sarkar's injuries such that the adverse action against her, most particularly termination, would not have been taken absent this retaliatory motive.

41. Ms. Mullen caused the PUCN to heighten its scrutiny and regulatory pressure upon Ms. Dey-Sarkar's employer, NV Energy, and then engaged in an unlawful conspiracy to terminate Ms. Dey-Sarkar so as to enable Mr. Adesina to return to NV Energy's properties without concern for the impact on Ms. Dey-Sarkar's professional and personal well-being in retaliation for Ms. Dey-Sarkar speaking out about Mr. Adesina's sexual and racial harassment.

42. Public officials, such as Ms. Mullen, in the employment context can be liable for retaliation, especially whereas here, such retaliation was done to coerce, persuade, and intimidate Ms. Dey-Sarkar so that she would lose her employment and be prevented from making any further reports about Mr. Adesina's improper conduct in the future.  And, as set forth above, other employees have previously complained about Mr. Adesina's improper conduct without the PUCN taking apparent action.

43. Ms. Dey-Sarkar's first amendment right to criticize the official conduct of Mr. Adesina, a public official, in the workplace context, without being subject to the threat of retaliation, here Ms. Mullen's coercive influence and pressure over NV Energy to terminate her, was clearly established as of October 2021 when the events that give rise to this lawsuit took place.  Accordingly, Ms. Mullen is not entitled to qualified immunity.

44. Ms. Mullen's retaliatory actions were reckless and/or malicious warranting punitive damages.

///

45. The aforementioned affirmative acts by Ms. Mullen caused Ms. Dey-Sarkar to suffer a deprivation of his rights protected by the First Amendment of the United States Constitution.

46. As a direct and proximate result of the foregoing First Amendment violation, Ms. Dey-Sarkar has suffered damages, in an amount exceeding $75,000.00, to be proven at trial.

**CLAIM NO. 3**
*Civil Conspiracy*
*Against Defendants*

47. Defendants Adesina, Mullen, and PUCN are a combination of two or more persons. Other conspirators may be identified and named during the course of this suit.

48. Defendants, by concerted action, intended to accomplish an unlawful objective when they employed heightened scrutiny and regulatory pressure upon NV Energy without proper justification. To alleviate this pressure, NV Energy terminated Ms. Dey-Sarkar from her employment so as to protect and restore its business relationship with the PUCN. As a result, Mr. Adesina was able to return to NV Energy properties and resume inspections without concern for Ms. Dey-Sarkar's wellbeing and safety and thus eliminating the potential future harassment.

49. Defendants agreed to accomplish this unlawful objective for the purpose of harming Ms. Dey-Sarkar.

50. Pursuant to NRS 41.036, Ms. Dey-Sarkar is submitting a claim with the Attorney General of the State of Nevada contemporaneous with filing this suit.

51. Defendant PUCN, as a political subdivision of the State of Nevada, is amendable to suit pursuant to NRS 703.100 and NRS 41.031, and has waived sovereign immunity accordingly.

52. As a direct and proximate result of the foregoing unlawful civil conspiracy, Ms. Dey-Sarkar has suffered damages, in an amount exceeding $75,000.00, to be proven at trial.

### CLAIM NO. 4
*Intentional Infliction of Emotional Distress*
*Against Defendant Adesina*

53. Defendant Adesina's aforementioned racial and sexual harassment was extreme and outrageous.

54. Defendant Adesina either intended or recklessly disregarded the causing of emotional distress upon Ms. Dey-Sarkar.

55. Plaintiff Dey-Sarkar suffered severe emotional distress.

56. Defendant Adesina's tortious conduct actually and proximately caused this severe emotional distress.

57. As a direct and proximate result of the foregoing intentional infliction of emotional distress, Ms. Dey-Sarkar has suffered damages, in an amount exceeding $75,000.00, to be proven at trial.

### CLAIM NO. 5
*Intentional Infliction of Emotional Distress*
*Against Defendant Mullen*

58. Defendant Adesina's aforementioned racial and sexual harassment was extreme and outrageous.

59. Defendant Mullen engaged in extreme and outrageous conduct when she, in response to Ms. Dey-Sarkar's complaint of racial and sexual harassment by Defendant Adesina, Ms. Mullen exercised the authority given to her by the State of Nevada without justifiable cause to retaliate by:

   A. increasing scrutiny of NV Energy's pipeline facilities; issued notices of probable violation; and threatened civil litigation at an intensified rate.

   B. exerting heightened scrutiny and regulatory pressure upon NV Energy thereby causing, at least in part, Ms. Dey-Sarkar's supervisor, Mr. Turner, to resign.

   C. conspiring with NV Energy to terminate Ms. Dey-Sarkar under the false pretense of poor employment performance so to have Mr. Adesina reinstated on NV Energy properties without the concern for further complaints by Ms. Dey-Sarkar over improper acts of sexual and racial harassment.

60. Defendant Mullen either intended or recklessly disregarded the causing of emotional distress upon Ms. Dey-Sarkar.

61. Plaintiff Dey-Sarkar suffered severe emotional distress.

62. Defendant Mullen's tortious conduct actually and proximately caused this severe emotional distress.

63. As a direct and proximate result of the foregoing intentional infliction of emotional distress, Ms. Dey-Sarkar has suffered damages, in an amount exceeding $75,000.00, to be proven at trial.

**CLAIM NO. 6**
*Respondeat Superior (Vicarious Liability)*
*Against Defendant Public Utilities Commission of Nevada*

64. Defendant PUCN, a Nevada employer, is vicariously liable for the wrongful acts or omissions of its employee, Defendant Adesina, as those tortious acts under state law – intentional infliction of emotional distress and civil conspiracy - were committed while under the PUCN's control and while acting within the scope of his employment.

65. Defendant PUCN, a Nevada employer, is vicariously liable for the wrongful acts or omissions of its employee, Defendant Mullen, as those tortious acts under state law – intentional infliction of emotional distress and civil conspiracy - were committed while under the PUCN's control and while acting within the scope of her employment.

66. Defendant PUCN, as a political subdivision of the State of Nevada, is amendable to suit pursuant to NRS 703.100 and NRS 41.031, and has waived sovereign immunity accordingly.

67. Defendant PUCN is responsible for the damages that Ms. Dey-Sarkar has suffered as a direct and proximate result of its employees' tortious actions, in an amount exceeding $75,000.00, to be proven at trial.

## V. PRAYER FOR RELIEF

Ms. Dey-Sarkar prays for judgment as follows:

1. General damages, in excess of $75,000.00, an amount to be proven at trial.

2. Compensatory damages, in excess of $75,000.00, in an amount to be proven at trial.

3. Punitive damages, in excess of $75,000.00, in an amount to be proven at trial.

4. Attorney's fees and costs pursuant to 42 U.S.C. §1988 and any other applicable provision.

5. Pre-judgment and Post-judgment interest at the maximum amount permitted by law.

6. Equitable relief, including but not limited to injunctive and declaratory relief. And,

7. Any other relief deemed fair, necessary, and just by the Court.

///

## VI. JURY TRIAL DEMAND

Plaintiff hereby requests a jury trial for all applicable claims.

DATED: October 23, 2022                STEPHENSON LAW, PLLC

*/s/ John Neil Stephenson*
By: John Neil Stephenson
Its: Managing Member
*Counsel for Plaintiff*

## VERIFICATION

I, Plaintiff Priya Dey-Sarkar, have read the foregoing Complaint and am familiar with its contents including the exhibits thereto.  I declare under penalty of perjury under the laws of the State of Nevada that the foregoing factual allegations are true and correct to the best of my knowledge and belief.

DATED: October 23, 2022

*PRiya Dey-Sarkar*
Priya Dey-Sarkar
*Plaintiff*

**EXHIBIT LIST**

| Exhibit | Description | Pages (Excl. tab) |
|---|---|---|
| 1 | Letter from Cyndi Divsalar to Cyndle Bell, re Priya Dey-Sarkar, dated November 4, 2021 | 3 |
| 2 | Letter from Brandon M. Barkhuff to Stephanie Mullen and Garrett Weir re Daniel Adesina, dated November 17, 2021 | 1 |
| 3 | Emails between Scott Turner, Ms. Dey-Sarkar and others, in and about December 27, 2021 | 3 |