UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

PRIYA DEY-SARKAR,

                          Plaintiff,

        v.

DANIEL ADESINA, *et al.*,

                          Defendants.

Case No. 3:23-cv-00517-MMD-CLB

ORDER

## I.    SUMMARY

Plaintiff Priya Dey-Sarkar brings this case alleging racial and sexual harassment, disparate treatment, and retaliation against her former employer, Defendant NV Energy d/b/a Sierra Pacific Power Company, NV Energy's President Douglas A. Cannon, and her former supervisor Nicholas Aboumrad. (ECF No. 68 ("TAC").) Plaintiff also sues Daniel Adesina, a gas pipeline engineer at Public Utilities Commission of Nevada ("PUCN") for sexually and racially harassing her during a PUCN inspection of an NV Energy site, as well as PUCN itself and PUCN's Executive Director Stephanie Mullen, for allegedly participating in a conspiracy with NV Energy and Plaintiff's superiors there to push her out of her job after she reported that Adesina sexually and racially harassed her. (*See generally id.*) Before the Court are three motions to dismiss filed by all Defendants that would collectively result in the complete dismissal of Plaintiff's TAC were the Court to grant them. (ECF Nos. 69, 71, 72.)[1] As further explained below, the Court will dismiss Plaintiff's conspiracy claim and her other claims against Mullen but deny dismissal of her

---

[1]The Court also reviewed the corresponding responses (ECF Nos. 79, 80, 81) and replies (ECF Nos. 83, 84, 85). Adesina joined the conspiracy portion of NV Energy, Cannon, and Aboumrad's motion. (ECF No. 74.) Mullen and PUCN joined Adesina's motion (ECF No. 76), along with the conspiracy portion of NV Energy, Cannon, and Aboumrad's motion (ECF No. 77). Adesina joined the conspiracy portion of Mullen and PUCN's reply in support of their motion. (ECF No. 86.)

1  claims against Adesina except for the conspiracy claim, along with most of her claims

2  against NV Energy, and her negligent retention and supervision claims against PUCN.

3  **II.    BACKGROUND**

4          The following facts are adapted from the TAC.[2] (ECF No. 68.) Plaintiff is a woman

5  of east Indian origin who worked for NV Energy in its Reno, Nevada office as a Senior

6  Gas Engineer. (*Id.* at 7.) She alleges that Adesina, a gas engineer who worked for PUCN,

7  sexually and racially harassed her during a PUCN inspection of an NV Energy property

8  in Washoe County, Nevada on October 28, 2021. (*Id.* at 5, 8.) Over the course of the two

9  hour inspection, he asked her over ten times why she was not married and did not have

10  children, telling her that she needed to have children because she could not be out in

11  society as an unmarried woman, falsely suggested she was divorced, and told her she

12  was an impractical, Americanized immigrant that was not living as an immigrant child

13  should, and thus must disappoint her parents. (*Id.* at 8-9.) He even suggested she should

14  see an OB-GYN to check whether her reproductive organs were functioning properly. (*Id.*

15  at 9.) He also told her she had a pretty face. (*Id.* at 8.) All of this left her feeling ashamed

16  of her life choices. (*Id.*)

17          The next day, Plaintiff reported Adesina's harassment to other NV Energy

18  employees. (*Id.* at 9.) NV Energy investigated and substantiated Plaintiff's harassment

19  claim. (*Id.* at 9-10.) On November 17, 2022, NV Energy's General Counsel Brandon

20  Barkhuff sent Defendant Mullen and PUCN's General Counsel Garret Weir a letter

21  prohibiting Adesina from entering NV Energy's property because he acted inappropriately

22  towards Plaintiff, though Barkhuff's letter later characterizes the prohibition as a request.

23  (*Id.* at 11.)

24  _____

25  [2]While this is the TAC, the Court has not yet substantively ruled on a motion to dismiss in this case. Plaintiff filed a first amended complaint as a matter of course, which mooted an initial motion to dismiss. (ECF No. 12.) The parties then stipulated to the filing

26  of a second amended complaint (ECF No. 30) and United States Magistrate Judge Carla Baldwin granted that stipulation (ECF No. 31). Plaintiff then moved for leave to file the

27  TAC while another round of motions to dismiss were pending (ECF No. 53), and the Court granted that motion (ECF No. 67). The TAC is accordingly the operative complaint, and

28  the first version of the complaint where the Court has substantively considered its allegations. (ECF No. 68.)

Meanwhile, the Nevada Department of Administration, Division of Human Resource Management Sex-or-Gender-based Investigation Unit, by and through an investigator named Peter R. Shaw, did its own investigation into Plaintiff's claims. (*Id.* at 11.) Shaw interviewed Adesina, who admitted he did ask some of the questions Plaintiff accused him of asking. (*Id.* at 12.) In part for this reason, Shaw concluded that Adesina may have violated Plaintiff's rights under "Title VII or the Civil Rights Act of 1964 regarding sex discrimination and a hostile work environment[.]" (*Id.*) Shaw sent Mullen a copy of his findings. (*Id.*) Mullen wrote back to him that his findings seemed to confirm what was reported to NV Energy's HR Division. (*Id.*)

Other NV Energy employees reported having issues with Adesina before he allegedly harassed Plaintiff. (*Id.*) Adesina made offensive remarks to an NV Energy employee named Kevin Peters in 2021 concerning Peters' parenting style, suggesting that Peters gave his daughter diabetes. (*Id.* at 13.) In 2020, Jesse Murray at NV Energy sent an email to Paul Maguire at PUCN complaining about Adesina's unsafe behavior during an inspection, noting that Adesina had driven the wrong way down a one way street on to the job site, was not wearing sturdy leather footwear, moved around the jobsite unsafely including near a trench, and interrupted the work crew with questions while they were performing a safety-sensitive task. (*Id.* at 13.)

On March 11, 2022, PUCN responded to Shaw's report regarding Adesina's harassment, stating that they disciplined him for the harassment by requiring him to take several online training courses. (*Id.* at 14.) In mid-March 2022, other NV Energy employees informed Plaintiff that Adesina had been cleared to resume inspecting NV Energy properties and expressed that they felt this put Plaintiff in a bad position. (*Id.* at 22-23.)

Between November 2021 and April 2022, Plaintiff alleges that PUCN and Mullen retaliated against her for speaking out about Adesina's harassment by increasing scrutiny on NV Energy, issuing more notices of probable (safety and policy) violations to NV Energy, and threatening civil litigation. (*Id.* at 14-15.) Plaintiff further alleges that her

3

supervisor Scott Turner resigned in part due to this increased scrutiny. (*Id.* at 15-16.) Plaintiff otherwise alleges that Defendant Cannon pushed Turner out to install a new supervisor of Plaintiff, Defendant Aboumrad, so that he could fabricate performance issues and fire Plaintiff as part of a conspiracy between NV Energy and PUCN to get rid of Plaintiff and permit Adesina to again inspect NV Energy locations free of any harassment allegations. (*Id.* at 16-17.)

After Aboumrad took over as Plaintiff's supervisor in March 2022, he subjected her to harsh scrutiny and abusive conduct that he did not subject her white, male colleagues to. (*Id.* at 19-20; *see also id.* at 23-24.) She called him out for this disparate treatment in a March 25, 2022, email. (*Id.* at 20.) Aboumrad issued a performance improvement plan to Plaintiff in April 2022. (*Id.*) In early May 2022, Plaintiff sent an NV Energy HR representative an email alleging Aboumrad's performance improvement plan was retaliation for her accusing Aboumrad of disparate treatment. (*Id.*) Plaintiff fleshed this allegation out by responding point-by-point to the performance improvement plan a few days later. (*Id.* at 20-21.) On May 26, 2022, she took this critique to Aboumrad directly, accusing him of diversity and gender discrimination in another email. (*Id.* at 21.)

Plaintiff additionally alleges that Aboumrad imposed unreasonable expectations on her in the performance improvement plan and fired her without just cause on June 2, 2022. (*Id.* at 17, 25-28.) After she was fired, Plaintiff "presented a charge of discrimination against NV Energy with the United States Equal Opportunity Employment Commission (EEOC)[.]" (*Id.* at 29.) The EEOC determined that NV Energy likely retaliated against Plaintiff for engaging in protected activity in October 2023. (*Id.* at 30.) The EEOC issued Plaintiff a right to sue letter in December 2023. (*Id.*)

Based on these allegations, Plaintiff brings 11 claims: (1) a 42 U.S.C. § 1983 claim against Adesina for violating her 14th Amendment equal protection rights; (2) a Section 1983 claim for First Amendment retaliation against Mullen; (3) a civil conspiracy claim against all Defendants; (4) an Intentional Infliction of Emotional Distress ("IIED") claim against Adesina; (5) an IIED claim against Mullen; (6) a negligent retention claim against

PUCN; (7) a negligent supervision claim against PUCN; (8) a status-based discrimination and disparate treatment claim against NV Energy under 42 U.S.C. § 2000e-2 ("Title VII") and 42 U.S.C. § 1981a(a)(1) ("Section 1981"); (9) a retaliation claim against NV Energy for reporting sexual harassment under Title VII and Section 1981; (10) a retaliation claim against NV Energy for reporting disparate treatment under Title VII and Section 1981; and (11) another retaliation claim against NV Energy, Cannon, and Aboumrad for reporting sexual harassment under Section 1981 more broadly, not just 42 U.S.C. § 1981a(a)(1). (*Id.* at 30-47.) She seeks damages of various types and equitable relief. (*Id.* at 48.)

## III.    DISCUSSION

The Court first addresses the conspiracy claim, the only claim asserted against all Defendants, then addresses the remainder of PUCN and Mullen's motion, next moves to Plaintiff's other claims asserted against Adesina, and finally addresses the remaining claims asserted against NV Energy, Cannon, and Aboumrad.

### A.    Conspiracy Claim

Plaintiff alleges that all Defendants conspired to fire her for reporting Adesina's sexual harassment and to enable Adesina to resume inspections at NV Energy sites through a complicated conspiracy: following Plaintiff's report of Adesina's harassment, NV Energy sent PUCN a letter requesting that Adesina not conduct inspections on their properties, so PUCN and Mullen increased regulatory scrutiny on NV Energy, leading to PUCN issuing more probable cause violation notices against NV Energy, and then, to discharge this increased regulatory scrutiny, Cannon pushed out Plaintiff's supervisor and instead installed Aboumrad as her supervisor, knowing Aboumrad would do what he was told and find a way to fire Plaintiff—and Aboumrad did, firing Plaintiff several months after he began managing her—paving the way for Adesina to resume inspections of NV Energy properties, and PUCN's probable cause violations against NV Energy to drop off. (ECF No. 68 at 34-36.) Defendants make overlapping arguments for dismissal of this claim,

1   most notably that Plaintiff does not plausibly or sufficiently specifically allege it. (ECF Nos.

2   69 at 6-12, 71 at 8-10, 72 at 6-10.) The Court agrees with Defendants.

3       "Actionable civil conspiracy arises where two or more persons undertake some

4   concerted action with the intent 'to accomplish an unlawful objective for the purpose of

5   harming another,' and damage results." *Interior Elec. Inc. Nevada v. T.W.C. Constr., Inc.*,

6   No. 2:18-cv-01118-JAD-VCF, 2020 WL 719410, at *5 (D. Nev. Feb. 12, 2020) (quoting

7   *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 335 P.3d 190, 198 (Nev. 2014)). "A

8   conspiracy action must be based on the agreement to commit a viable tort." *Hunt v. Zuffa*,

9   LLC, 361 F. Supp. 3d 992, 1010 (D. Nev. 2019) (citations omitted). And at the motion to

10  dismiss stage, "an allegation of parallel conduct and a bare assertion of conspiracy will

11  not suffice[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Instead, a complaint

12  that can survive a motion to dismiss requires some further "factual enhancement"

13  sufficient to cross the line between "possibility and plausibility of 'entitle[ment] to relief.'"

14  *Twombly*, 550 U.S. at 557.

15      Plaintiff's conspiracy claim in her TAC does not quite cross the plausibility line—

16  for several, alternative reasons. First, she alleges that an object of the conspiracy was to

17  fire her to achieve the goal of permitting Adesina to resume inspections of NV Energy

18  properties. (ECF No. 68 at 36.) But Plaintiff otherwise alleges that Adesina was cleared

19  to inspect NV Energy properties again in March 2022, well before she was fired in June

20  2022. (*Id.* at 22 (regarding Adesina's return), 17 (stating she was terminated in June

21  2022).) Based on Plaintiff's allegations, it is accordingly implausible that Plaintiff was fired

22  so that Adesina could resume inspections of NV Energy properties because he was

23  cleared to resume those inspections before she was fired. Second, and as PUCN and

24  Mullen argue, it is unclear from the TAC why Plaintiff would have to be fired for Adesina

25  to resume inspections in any event, as NV Energy has many employees and many

26  different sites Adesina could inspect. (ECF No. 69 at 8.) Adesina could have been kept

27  away from Plaintiff when he inspected NV Energy properties in any number of ways that

28

do not require firing Plaintiff. But as noted, he was cleared to resume inspections before she was fired in any event.

Third, while Plaintiff calls the letter NV Energy sent PUCN regarding Adesina's harassment of Plaintiff a 'ban,' PUCN and Mullen are correct that the letter is actually a request that Adesina not be sent to inspect NV Energy facilities. (ECF No. 68 at 11 (calling it a ban, but the excerpted language first calls it a prohibition and later clarifies it is a request).) This makes it implausible that PUCN and Mullen would conspire with NV Energy and its employees to fire Plaintiff so that Adesina could resume inspections— because he was not actually blocked from inspecting NV Energy properties. (ECF No. 69 at 8-9.) And as PUCN and Mullen also argue, it would be illogical for a regulated entity to have the ability to ban an individual inspector from its sites because that would allow the regulated entity to keep out inspectors that found legitimate safety issues. (*Id.*)

Fourth, perhaps the key factual allegations Plaintiff uses to support the existence of a conspiracy are the allegations regarding the increased numbers of notices of probable violations PUCN issued NV Energy between November 2021 and April 2022. (ECF No. 68 at 14-15.) But PUCN has a statutory mandate to ensure that regulated entities operate safely, and the notices of probable violation Plaintiff relies on all highlight safety or policy issues that PUCN inspectors found at NV Energy sites or with NV Energy practices. (ECF No. 68 at 177-218 (letters noting potential safety issues).) Importantly, Plaintiff nowhere alleges that any of these notices, or even the notices Adesina was specifically involved in, were false; meaning not reflecting any actual safety issues but instead drummed up to increase pressure on NV Energy to fire Plaintiff. (*Id.* at 15.) This key omission renders Plaintiff's theory that these notices of potential safety issues reflected a pressure campaign on PUCN's part implausible. Indeed, considering that part of PUCN's mission is to ensure safety and PUCN apparently found NV Energy was engaged in unsafe practices, giving NV Energy the opportunity to remedy those safety issues is a more plausible alternative explanation for the notices. It is of course conceivable that notices of safety violations could be issued as a part of a pressure

1     campaign, but there would have to be some supporting factual allegations missing from

2     the TAC suggesting that a pressure campaign is a more plausible explanation than the

3     regulator simply having found safety violations.

4           Fifth, and more broadly, Plaintiff alleges that Defendants tacitly conspired from

5     December 27, 2021, to April 2022 but does not allege any specific meetings that they all

6     attended or otherwise explain how they entered into a tacit agreement. (*Id.* at 16, 34.) The

7     TAC similarly lacks allegations about how each Defendant otherwise joined the

8     conspiracy. (*Id.*) It also lacks any allegations about what happened or what was agreed

9     to at any specific meetings, much less when they happened. (*Id.* at 16-17, 34-36.) What

10    Plaintiff describes in the TAC could just as easily be independent conduct undertaken for

11    reasons unrelated to the alleged conspiracy—such as meetings between a regulator and

12    regulated entity for any number of legitimate reasons. (*Id.*) Said otherwise, these portions

13    of Plaintiff's TAC lack allegations rendering it plausible that Defendants met or agreed to

14    take some concerted action in furtherance of a conspiracy.

15          For all these alternative reasons, Plaintiff has not plausibly alleged her Claim 3 for

16    civil conspiracy. That claim is accordingly dismissed as to all Defendants, and all three

17    pending motions to dismiss are granted as to that claim.[3]

18    ///

19

20          [3]PUCN and Mullen also move to strike Section L of Plaintiff's TAC (ECF No. 68 at
      18-19), in which Plaintiff attempts to illustrate collusion between NV Energy and PUCN
21    using past examples, as immaterial, impertinent, or scandalous because Plaintiff
      discusses therein contested factual allegations unrelated to the claims at issue in this
22    case (ECF No. 69 at 23-24). Plaintiff counters she is properly attempting to suggest
      collusion between NV Energy and PUCN and otherwise argues that these other
23    allegations need not be struck because they are contested. (ECF No. 85 at 12.) But
      because the Court is dismissing Plaintiff's conspiracy claim, these allegations regarding
24    other instances of collusion between PUCN and NV Energy are no longer relevant to this
      case, and may, as PUCN and Mullen argues in reply (ECF No. 85 at 12) lead to trials
25    within this trial as this case proceeds. The Court accordingly agrees with PUCN and
      Mullen that the allegations in in Section L of Plaintiff's TAC should be struck as immaterial,
26    impertinent, and scandalous. *See* Fed. R. Civ. P. 12(f) (permitting the Court to strike such
      allegations from a pleading). Because the Court cannot direct the Clerk of Court to strike
27    a portion of a pleading, the Court will direct the Clerk of Court to strike the whole TAC and
      order Plaintiff to file a fourth amended complaint that removes the claims and parties
28    dismissed in this order, and which no longer includes Section L. (ECF No 68 at 18-19.)
      The Court orders Plaintiff to file the fourth amended complaint consistent with this order
      within 15 days.

**B.    Other Claims Against PUCN and Mullen**

Beyond the conspiracy claim, Plaintiff asserts a First Amendment retaliation claim against PUCN's executive director Mullen, an IIED claim against Mullen, and two claims for negligent retention and negligent supervision against PUCN based on Adesina's sexual harassment of Plaintiff even though another NV Energy employee had previously complained about his unsafe behavior during an inspection. The Court addresses Mullen and PUCN's motion as to these claims, in turn, below.

**1.    First Amendment Retaliation Against Mullen**

Plaintiff's theory in her second claim for First Amendment retaliation against Mullen is that Mullen increased scrutiny on NV Energy after NV Energy let her know about Plaintiff's complaint against Adesina and the corresponding 'ban' of Adesina from NV Energy's properties by issuing notices of probable violation and threatening civil litigation against NV Energy, and then conspiring with Plaintiff's supervisors at NV Energy to fire her, enabling Adesina to resume inspections. (ECF No. 68 at 31-33.) Mullen argues for dismissal of this claim because it is based on letters attached to Plaintiff's TAC that show potential safety issues—squarely within PUCN's regulatory mandate—Plaintiff fails to plausibly allege facts that would satisfy the second and third elements of this claim, Mullen did not personally participate in the alleged violations, and she is alternatively entitled to qualified immunity. (ECF No. 69 at 12-17.) Plaintiff counters that Mullen personally participated because she got emails about Adesina's harassment and the ban letter but only assigned Adesina remedial online trainings as punishment, her arguments are otherwise inappropriate at the motion to dismiss stage, and she is not entitled to qualified immunity because it was clearly established that it is unconstitutional to retaliate against someone for reporting sexual harassment. (ECF No. 79 at 15-18.) The Court agrees with Mullen in pertinent part.

"To state a First Amendment retaliation claim, [Plaintiff] must plausibly allege that (1) she engaged in a constitutionally protected activity, (2) [Mullen's] actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3)

1    the protected activity was a substantial or motivating factor in [Mullen's] conduct."

2    *Sampson v. Cnty. of Los Angeles by & through Los Angeles Cnty. Dep't of Child. & Fam.*

3    *Servs.*, 974 F.3d 1012, 1019 (9th Cir. 2020) (citation omitted). Plaintiff must also establish

4    that discriminatory animus was the but-for cause of her injury, meaning that adverse

5    action would not have been taken against her absent the retaliatory motive. *See id.* Said

6    otherwise, Plaintiff must plausibly allege that PUCN only issued notices of probable

7    violation to NV Energy during the pertinent time because of Mullen's "desire to retaliate

8    against her for speaking out about [Adesina's] sexual harassment." *Id.*

9         To start, Plaintiff's allegation that Mullen retaliated in part by joining the conspiracy

10   also alleged in her standalone conspiracy claim is not plausibly alleged for the reasons

11   provided above as to that claim. (ECF No. 68 at 32.) This leaves Plaintiff's allegations

12   that Mullen retaliated against her by increasing scrutiny and regulatory pressure on NV

13   Energy, specifically by issuing notices of probable violation and threatening civil litigation,

14   causing, at least in part, Plaintiff's supervisor Turner to resign. (*Id.* at 32.) And while

15   Plaintiff alleges that Mullen's retaliatory animus was the but for cause of these actions,

16   that allegation is conclusory and implausible. (*Id.*) *See also Twombly*, 550 U.S. at 555 ("a

17   formulaic recitation of the elements of a cause of action will not do").

18        The allegation that Mullen's retaliatory animus was the but-for cause of PUCN

19   issuing notices of probable violation and threatening civil litigation is conclusory and

20   implausible for several reasons. First, the TAC nowhere explains what specific civil

21   litigation PUCN threatened, or when. (ECF No. 68.) Second, as to the notices of probable

22   violation, and as explained above as to the conspiracy claim, these notices of probable

23   violation identified safety issues and policy noncompliance—and Plaintiff fails to allege

24   the concerns identified in these letters were not genuine. Said otherwise, the TAC lacks

25   facts that suggests these notices of probable violation were more likely motivated by

26   retaliatory animus than they were simply reflective of safety and policy issues that PUCN

27   inspectors identified during their inspections of NV Energy operations. These omissions

28   are important because it is PUCN's job to issue notices of probable violation when its

1   inspectors have cause to issue them. *See, e.g.*, NRS § 703.150 ("The Commission shall
2   supervise and regulate the operation and maintenance of public utilities…"). The Court
3   accordingly finds it too implausible that Mullen directed PUCN to issue these notices of
4   probable violation to retaliate and Plaintiff's first amendment retaliation claim fails for that
5   reason.

6   Alternatively, the Court agrees that Mullen is entitled to qualified immunity as to
7   this claim. Again, Plaintiff basically alleges Mullen directed PUCN to conduct retaliatory
8   investigations of pipeline safety because Plaintiff reported Adesina's harassment. (ECF
9   No. 68 at 32.) But it is not clearly established that a retaliatory investigation violates
10  Plaintiff's First Amendment rights. *See Moore v. Garnand*, 83 F.4th 743, 752-53 (9th Cir.
11  2023). And while Plaintiff argues that it was clearly established that retaliating against
12  someone for speaking out about sexual harassment violates the First Amendment based
13  on *Sampson*, 974 F.3d at 1016 (ECF No. 79 at 19-20), the *Sampson* court found it was
14  clearly established "that the First Amendment prohibits public officials from threatening to
15  remove a child from an individual's custody to chill protected speech out of retaliatory
16  animus for such speech[.]" *Sampson*, 974 F.3d at 1020. Plaintiff does not allege that
17  Mullen threatened to remove a child from her custody; she alleges that Mullen directed
18  PUCN to issues notices of probable violation to NV Energy based on safety and policy
19  violations Plaintiff does not allege were false. Thus, *Moore* is a better fit than *Sampson*
20  for purposes of determining that Mullen is entitled to qualified immunity as to Plaintiff's
21  first amendment retaliation claim.

22  In sum, the Court grants Mullen and PUCN's motion as to Plaintiff's Claim 2
23  alleging First Amendment retaliation against Mullen.

### 2.    IIED Against Mullen

25  Plaintiff's IIED claim against Mullen is based on her participating in the alleged
26  conspiracy and otherwise imposing extra regulatory scrutiny on NV Energy. (ECF No. 68
27  at 37-38.) Mullen argues for dismissal of this claim because her alleged conduct of issuing
28  regulatory notices to NV Energy was not outrageous. (ECF No. 69 at 20.) Plaintiff

1    counters she plausibly alleged this claim by unpersuasively pointing back to the

2    allegations in her TAC. (ECF No. 79 at 20-21.) The Court agrees with Mullen.

3        "The elements of a cause of action for intentional infliction of emotional distress

4    are '(1) extreme and outrageous conduct with either the intention of, or reckless disregard

5    for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme

6    emotional distress and (3) actual or proximate causation.'" *Dillard Dep't Stores, Inc. v.*

7    *Beckwith*, 989 P.2d 882, 886 (Nev. 1999) (citation omitted). To establish severe emotional

8    distress, the plaintiff must demonstrate that "the stress [is] so severe and of such intensity

9    that no reasonable person could be expected to endure it." *Alam v. Reno Hilton Corp.*,

10   819 F. Supp. 905, 911 (D. Nev. 1993) (citing *Nelson v. City of Las Vegas*, 665 P.2d 1141,

11   1145 (Nev. 1983)). "General physical or emotional discomfort is insufficient to

12   demonstrate severe emotional distress." *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1268 (D.

13   Nev. 2001) (citing *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 462 (Nev. 1993)).

14       To the extent Plaintiff alleges that this claim is based on her conspiracy claim, the

15   Court again notes its finding that she did not plausibly allege her conspiracy claim. And

16   indeed, even termination for improper reasons is not outrageous enough to state an IIED

17   claim.  *See Welder v. Univ. of S. Nevada*, 833 F. Supp. 2d 1240, 1245-46 (D. Nev. 2011).

18   So even if Plaintiff's conspiracy claim was viable, it could not support an IIED claim. And

19   a regulator issuing a notice of probable violation to a regulated entity is simply not

20   outrageous. Because PUCN has a statutory mandate to ensure its regulated entities

21   operate safely, issuing notices of probable violation cannot be—and is not—outside all

22   possible bounds of decency. *See id.* at 1245 (describing how a viable IIED claim must

23   allege conduct that is outside all possible bounds of decency) (citing *Maduike v. Agency*

24   *Rent-A-Car*, 953 P.2d 24, 26 (1998)). The Court accordingly grants PUCN and Mullen's

25   motion to dismiss Plaintiff's Claim 5 for IIED against Mullen.

26                **3.    Negligent Retention and Supervision Claim Against PUCN**

27       Plaintiff's sixth and seventh claims in her TAC for negligent retention and

28   supervision against PUCN are both based on her theory PUCN breached its duty of care

to her when Adesina harassed her because PUCN knew or should have known of his dangerous propensities, as PUCN had previously received reports from NV Energy raising health and safety concerns about Adesina. (ECF No. 68 at 39-40.) Addressing these two claims together, PUCN and Mullen argue for their dismissal in pertinent part because PUCN could not have been on notice of Adesina's propensity to engage in sexual or racial harassment based on a prior report that Adesina conducted an inspection in an unsafe manner, by, for example, wearing unsafe footwear. (ECF No. 69 at 21-23.) Plaintiff again refers to the allegations in her TAC in response, mentions other NV Energy employees had issues with Adesina, and points to Adesina's safety violations at one NV Energy site visit as indicative of his 'dangerous propensities.' (ECF No. 79 at 21-22.) She further argues that PUCN and Mullen are improperly arguing the weight of the evidence at the motion to dismiss stage and cite no law directly supporting their argument that the 'dangerous propensity' must be the same type of dangerous propensity that harmed Plaintiff. (*Id.*) The Court agrees with Plaintiff.

To state a claim for negligent hiring, retention, and supervision of employees, a plaintiff must allege, "that: (1) defendant owed a duty of care to the plaintiff; (2) defendant breached that duty by hiring, retaining, and/or supervising an employee even though defendant knew, or should have known, of the employee's dangerous propensities; (3) the breach was the cause of plaintiff's injuries; and (4) damages." *Peterson v. Miranda*, 57 F. Supp. 3d 1271, 1280 (D. Nev. 2014) (citing *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996)). (*See also* ECF Nos. 69 at 22, 79 at 21 (relying on the same citation for the standard).)

Plaintiff has sufficiently alleged these claims. She alleges that PUCN owed her a duty of care as an NV Energy employee because Adesina necessarily interacted with her during the course and scope of his employment as an inspector. (ECF No. 68 at 39-40.) Plaintiff also alleges that Adesina's harassment of her reflected a breach of PUCN's duty to her and caused her damages. (*Id.*) Moreover, it is plausible that being sexually and racially harassed by an inspector you must interact with because you work for a regulated

1   entity could constitute a breach of the regulator's duty to you. Said otherwise, Plaintiff has

2   plausibly alleged the first, third, and fourth elements of these torts.

3        Mullen and PUCN target the second element, making the reasonable argument

4   that the dangerous propensities—safety violations—Plaintiff relies on to allege that PUCN

5   knew or should have known about Adesina's dangerous propensities before Adesina

6   sexually and racially harassed her are different in kind, and thus would not have

7   reasonably put PUCN on notice of the possibility Adesina was going to harass Plaintiff.

8   (ECF No. 69 at 21-23.) But Plaintiff is correct that none of the cases PUCN and Mullen

9   rely on in this portion of their motion distinguish between different types of propensities

10  and thus do not directly support their argument. In the absence of such caselaw, whether

11  the 'dangerous propensities' PUCN knew about before Adesina allegedly sexually and

12  racially harassed Plaintiff are similar enough to a propensity for sexual and racial

13  harassment is a factual question not suitable for resolution on a motion to dismiss. And it

14  is plausible that a disregard for safety procedures is a 'dangerous propensity'—

15  particularly when the Court construes Plaintiff's allegations in the light most favorable to

16  her, as it must at this stage. (ECF No. 68 at 13 (excerpting description of safety issues).)

17  *See also Friedman v. AARP, Inc.*, 855 F.3d 1047, 1051 (9th Cir. 2017) (citation omitted).

18  The Court accordingly denies Mullen and PUCN's motion to dismiss Plaintiff's sixth and

19  seventh claims for negligent retention and supervision against PUCN.

20       Given the analysis above, the Court dismisses all Plaintiff's claims asserted

21  against Mullen, but Plaintiff's claims for negligent retention and supervision will proceed

22  against PUCN. So, the Court will dismiss Mullen from this case.

23       **C.    Other Claims Against Adesina**

24       Plaintiff asserts two other claims beyond her conspiracy claim against Adesina for

25  sexually and racially harassing her during the PUCN inspection of an NV Energy facility

26  in Washoe County on October 28, 2021: one for violation of her rights under the 14th

27  Amendment's equal protection clause and another for IIED.

28  ///

1

### 1.    14th Amendment Equal Protection

Relying on Title VII cases, Adesina argues for dismissal of Plaintiff's claim that he violated her 14th Amendment Equal Protection rights by sexually harassing her because his harassment was not severe or pervasive enough to alter her conditions of employment. (ECF No. 71 at 4-7.) Plaintiff points out in response that this is not a Title VII claim but instead one for violation of her equal protection rights, and otherwise argues that she has sufficiently alleged sexual harassment as confirmed by the findings of the EEOC and the State of Nevada, which both found Adesina may have violated Plaintiff's rights under Title VII. (ECF No. 81 at 5-6.) The Court agrees with Plaintiff.

"State public officials violate our Constitution's promise of equal protection when they sexually harass the people they serve[.]"[4] *Sampson*, 974 F.3d at 1025. "[A]llegations of 'persistent and unwelcome physical and verbal abuse'" "'state a claim of sexual harassment, which can be impermissible sex discrimination in violation of the Equal Protection Clause.'" *Id.* at 1022-23 (citations omitted).

While it is true that Adesina only harassed Plaintiff during one two-hour incident and Plaintiff does not allege he touched her, the Court finds that Plaintiff's allegations about the nature and content of Adesina's questions were sufficiently persistent (and certainly unwelcome) sufficient to state an equal protection claim. Adesina did not just allegedly tell Plaintiff she had a pretty face, he repeatedly asked her why she was not married and did not have children, suggesting that being unmarried and without children at her age meant her parents were disappointed with her, and told her she was out of

---

[4]Adesina does not argue he is not a state actor or was not acting under color of state law when he conducted the inspection during which he allegedly harassed Plaintiff. (ECF No. 71 at 4-7.) Nor does he dispute that his interrogation of Plaintiff was based on her sex and race or national origin. (*Id.*) Thus, while other elements of this claim include that Adesina acted under color of state law, *see Sampson*, 974 F.3d at 1018, and "plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class[,]" *see id.* at 1022, Adesina does not appear to dispute that Plaintiff has plausibly alleged those elements. The Court accordingly does not focus on them in its analysis. However, Plaintiff alleges that Adesina works for Nevada (ECF No. 68 at 5), the harassment occurred while Adesina was conducting an official inspection (*id.* at 8), and Adesina's pertinent comments described in the TAC are racialized and sexualized (in the sense of relating to gender norms) (*id.* at 8-9), so these elements are satisfied.

place in society. (ECF No. 68 at 8-9.) Indeed, he asked her more than 10 times why she was unmarried and had no children, telling her repeatedly that she could not be out in society without a husband and children. (*Id.*) He also said, "she was not representing her culture or her parents well and that she was very impractical and spoiled." (*Id.* at 9.) He even went so far as to suggest she should see an OB-GYN if she had not already to ensure her reproductive organs were functioning properly. (*Id.*) And he persisted in these repeated questions for at least two hours. (*Id.*) Plaintiff felt he was shaming her about her life choices. (*Id.* at 8.) These allegations suffice for Plaintiff's equal protection claim against Adesina to proceed past the motion to dismiss stage.

Adesina's arguments to the contrary are not demonstrably false—but are unpersuasive. He argues this claim should be dismissed because he did not demand sexual favors from Plaintiff or force her to have sex with him after choking her with a phone cord and hitting her over the head with a radio. (ECF No. 71 at 5.) These arguments are based on Title VII decisions (one from the Ninth Circuit and the other from the Northern District of Illinois) from the late 80s and mid 90s. But societal expectations have changed since then. And even if they had not, pointing to conduct that is more severe than the conduct alleged here does not mean the conduct alleged here is insufficiently severe to state a claim for an equal protection violation. In addition, the other Title VII cases upon which Adesina relies significantly predate *Sampson*, which was, remarkably (because it was decided in 2020),[5] the first Ninth Circuit decision to explicitly hold it is clearly established that a state official violates someone's equal protection rights when they sexually harass them. *See Sampson*, 974 F.3d at 1025. Thus, while none of the cases upon which Adesina relies have been explicitly overruled, they are Title VII cases (mostly arising from summary judgment decisions) from an earlier time. None of them

_____

[5]The Ninth Circuit itself seemed surprised. "Unfortunately, the Supreme Court's exceedingly narrow interpretation of what constitutes a 'clearly established' right precludes us from holding what is otherwise obvious to us—that the right of private individuals to be free from sexual harassment at the hands of public officials outside of the workplace and school contexts was clearly established under the Equal Protection Clause at the time of Defendants' conduct." *Sampson*, 974 F.3d at 1025.

1   postdate *Sampson* or specifically discuss an equal protection claim based on sexual
2   harassment.

3   Moreover, Adesina does not proffer any recent, binding precedent holding that
4   physical contact is required to state an equal protection claim based on sexual
5   harassment. (ECF No. 83 at 3-4 (insisting that he did not sexually harass her because he
6   did not touch her).) And the Court was not able to locate any in its limited independent
7   research on the topic. The Court is accordingly reluctant to end Plaintiff's sexual
8   harassment claim against Adesina this early in the case given the plausibility and severity
9   of the allegations against Adesina described in Plaintiff's TAC.

10   In sum, the Court denies Adesina's motion to dismiss Plaintiff's equal protection
11   claim against him based on alleged sexual harassment.

12                           **2.    IIED**

13   Adesina similarly argues for dismissal of this claim because his conduct was not
14   extreme or outrageous—merely awkward—and it is unclear from her allegations both
15   when her symptoms manifested and whether Adesina or Plaintiff's manager Aboumrad
16   caused them. (ECF No. 71 at 10-12.) Plaintiff counters that she has plausibly alleged the
17   three elements of this tort. (ECF No. 81 at 9-10.) The Court again agrees with Plaintiff.

18   Plaintiff has plausibly alleged all three elements of her IIED claim against Adesina.
19   (*See* section III.B.2.) First, Plaintiff alleges that Adesina's racial and sexual harassment
20   was outrageous. (ECF No. 68 at 37.) And the Court at least agrees it was plausibly
21   outrageous or outside the bounds of decency. Shaming a woman of Indian descent for
22   being unmarried and without children in part by suggesting that she is disappointing her
23   parents, repeatedly asking why she is not married and does not have children, and even
24   asking her if she has been to an OB-GYN to ensure she can have children is certainly
25   outside the bounds of decency sufficient to state a claim. (*Id.* at 8-9.) Second, she alleges
26   that she suffered physical and psychological symptoms because of Adesina's
27   harassment. (ECF No. 68 at 37.) The fact that she alleges the same symptoms because
28   of what Mullen allegedly did to her (*id.* at 38) does not—contrary to Adesina's argument

1  (ECF No. 71 at 11-12)—render these allegations about her symptoms implausible

2  because the same symptoms could have multiple causes. And his related argument

3  pointing to Aboumrad is similarly unpersuasive because the fact that Aboumrad also

4  caused Plaintiff emotional distress does not make it any less plausible that Adesina did.

5  Third, Plaintiff alleges that Adesina caused her severe emotional distress. (ECF No. 68

6  at 37.) This allegation is plausible because Adesina's "invasive, personal questions and

7  inappropriate comments" inextricably tied to her statuses as a woman of Indian descent

8  made her feel shame about her personal life choices. (*Id.* at 8-9.)

9       Plaintiff has plausibly stated a IIED claim against Adesina. Adesina's motion is thus

10  denied to the extent it seeks dismissal of this claim asserted against him.

11       **D.   Other Claims Against NV Energy, Cannon, and Aboumrad**

12       Plaintiff asserts several claims against NV Energy and/or its President and

13  Plaintiff's former supervisor at the time she was fired beyond her conspiracy claim. (ECF

14  No. 68 at 40-47.) These Defendants move to dismiss these claims as well. (ECF No. 72.)

15  The Court addresses these Defendants' motion as to each of these remaining claims, in

16  turn, below.

17            **1.   Discrimination – Disparate Treatment**

18       Plaintiff includes a status-based discrimination claim under Title VII and Section

19  1981 on a disparate-treatment theory for NV Energy's decision to fire her but not her

20  white, male coworkers on pretextual claims of poor job performance. (ECF No. 68 at 40-

21  41.) NV Energy argues for dismissal of this claim because Plaintiff did not allege

22  satisfactory job performance at or around the time she was fired, instead only pointing to

23  prior job performance, nor did Plaintiff identify similarly situated employees who were

24  treated better than her. (ECF No. 72 at 11-14.) Plaintiff responds that she did. (ECF No.

25  80 at 7-9.) The Court agrees with Plaintiff.

26       Plaintiff must plausibly allege that "'(1) she belongs to a protected class, (2) she

27  was performing according to her employer's legitimate expectations, (3) she suffered an

28  adverse employment action, and (4) other employees with qualifications similar to her

1    own were treated more favorably."' *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir.

2    2007) (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998)).[6]

3         As noted, NV Energy argues that Plaintiff's TAC lacks plausible allegations going

4    to the second and fourth elements. (ECF No. 72 at 11-14.) But there are plausible

5    allegations going to these elements in the TAC. As to the second element, Plaintiff alleges

6    that she received high annual bonuses and exemplary performance reviews in each year

7    she worked at NV Energy, including 2021, and that did she not receive any verbal or

8    written reprimands until she was given the performance improvement plan in April 2022

9    and was then terminated 45 days into its 60-day term. (ECF No. 68 at 7-8.) And she

10   otherwise alleges she had productive relationships with her managers until Aboumrad

11   became her manager mere months before she was terminated. (*Id.* at 15, 41.) In the

12   portion of her TAC alleging this claim specifically, she also alleges that she was qualified

13   for the position she held at the time she was terminated "until she was terminated." (*Id.* at

14   40.) Read together, these allegations plausibly establish that Plaintiff was performing

15   according to her employer's legitimate expectations at the time she was fired.

16         Plaintiff also plausibly alleges that other employees with qualifications similar to

17   hers were treated more favorably than she was. Indeed, as Plaintiff points out in her

18   response (ECF No. 80 at 9), she alleges that similarly situated white males were treated

19   more favorably than her (ECF No. 68 at 22 ("NV Energy has treated similarly situated

20   individuals outside of Ms. Dey-Sarkar's protected class, namely White Males, more

21   favorably than her."), 21, 24 ("requests that he did not make of Ms. Dey-Sarkar's white

22   male colleagues")), even calling them out by name (*id.* at 20 ("Jim, Troy, Cody, You,

23   Clint"), 21 ("Matt, Jim, Jeff, Cory"), and further alleges that two white males were

24   responsible for firing her (*id.* at 40). Defendants' contrary argument overlooks these

25   allegations and is thus unpersuasive.

26

27         [6]The Section 1981 analysis is the same. *See Surrell v. California Water Serv. Co.*,

28   518 F.3d 1097, 1103 (9th Cir. 2008) ("When analyzing § 1981 claims, we apply 'the same legal principles as those applicable in a Title VII disparate treatment case.'") (citation omitted).

In sum, Defendants NV Energy, Aboumrad, and Cannon's motion is denied to the extent it seeks dismissal of Plaintiff's Claim 8 alleging disparate treatment against NV Energy.

### 2.    Retaliation for Reporting Racial and Sexual Harassment

Plaintiff's Claim 9 in the TAC alleges that NV Energy fired her in retaliation for reporting Adesina's sexual and racial harassment in violation of Title VII and Section 1981. NV Energy argues this claim should be dismissed because Plaintiff has not alleged an adequate causal link between her reporting Adesina's harassment and her termination—approximately 8 months is too long to give rise to a plausible inference of causation. (ECF No. 72 at 14-15.) Plaintiff counters that the gap in time was not too long and mere timing is not the only thing tying the events together; she alleges other facts that render it plausible NV Energy terminated her in retaliation for reporting Adesina's harassment. (ECF No. 80 at 9-12.) The Court agrees with Plaintiff.

"To make out a prima facie case of retaliation, an employee must show that (1) [s]he engaged in a protected activity; (2) [her] employer subjected [her] to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). (*See also* ECF Nos. 72 at 14, 80 at 9 (relying on this same citation for the applicable standard).)

There is no dispute between the parties as to the first and second elements; she reported Adesina's harassment on October 29, 2021, and was fired on June 22, 2022. (ECF No. 68 at 41.) As noted, NV Energy's argument focuses on the third element. But NV Energy's argument overlooks other allegations in the TAC that link the two events together; despite good job performance, Aboumrad was antagonistic towards Plaintiff as soon as he started managing her and fired her not long afterwards despite her comparatively long tenure in that job. (*Id.* at 41-43.) Moreover, Aboumrad was allegedly not qualified for his position and was instead selected by Cannon to come up with pretextual reasons to fire Plaintiff. (*Id.* at 42.) In addition, Plaintiff was not given the full term of her performance improvement plan to improve her performance, suggesting that

20

1  the performance issues were a pretext for firing her. (*Id.* at 43.) These allegations suffice

2  to plausibly allege a causal link between Plaintiff reporting the harassment and her

3  eventual termination.

4      The motion to dismiss Plaintiff's Claim 9 alleging retaliation for reporting Adesina's

5  harassment against NV Energy is accordingly denied.

### 3.    Retaliation for Reporting Disparate Treatment

7      Plaintiff's Claim 10 alleges retaliation under Title VII and Section 1981 for reporting

8  disparate treatment based on her sex in four emails she sent in March and May 2022,

9  and then being fired in June 2022. (ECF No. 68 at 44-46.) NV Energy argues for dismissal

10  of this claim for failure to allege protected activity, specifically arguing that Plaintiff is not

11  complaining about disparate treatment based on gender in the four emails she references

12  in her TAC. (ECF No. 72 at 15-18.) Plaintiff counters that NV Energy's argument overlooks

13  portions of the four emails rendering her claim plausible. (ECF No. 80 at 12-14.) The

14  Court agrees with Plaintiff.

15      Plaintiff attached the emails she relies on to support this claim as exhibits to her

16  TAC, so the Court reviewed them. *See, e.g.*, *Nat'l Ass'n for Advancement of*

17  *Psychoanalysis v. California Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) ("In

18  determining whether plaintiffs can prove facts in support of their claim that would entitle

19  them to relief, we may consider facts contained in documents attached to the complaint.")

20  (citation omitted). In ruling on motions to dismiss, the Court "must accept 'all factual

21  allegations in the complaint as true and construe the pleadings in the light most favorable

22  to the nonmoving party.'" *Friedman*, 855 F.3d at 1051 (citation omitted). Construed in the

23  light most favorable to Plaintiff, Plaintiff engaged in protected activity when she sent the

24  pertinent emails because they complain that she is being treated worse than her male

25  colleagues because she is a woman.

26      Specifically, in the first email she refers to, she begins by writing that the business

27  "may just be better off with a male in my role" because her and a female colleagues'

28  recommendations are always met with undue scrutiny, but similar recommendations are

accepted when made by male colleagues, "Jim, Troy, Cody, You [Aboumrad], Clint[.]" (ECF No. 68 at 131-32.) And while she continues, "I want to be clear this is not about discrimination," she proceeds to attribute the differential treatment to unconscious bias and then says that 'female engineers can write essays about this stuff.' (*Id.* at 132.) Construing this email in the light most favorable to Plaintiff, she is complaining about differential treatment based on gender. Similarly, Plaintiff forwarded this email to an HR employee in the May 5 email Plaintiff also refers to in her TAC, where Plaintiff ventures that the performance plan Aboumrad issued for her was in retaliation for her sending the email complaining about differential treatment based on gender. (*Id.* at 131.) Again, construed in a light favorable to Plaintiff, she was also complaining about differential treatment in this email; indeed, she is complaining about retaliation for complaining about differential treatment based on sex. (*Id.*)

Plaintiff also relies on a document she put together in response to the performance improvement plan to support this claim. (*Id.* at 137-144.) In this document, too, Plaintiff refers to her suggestion to 'get a male in this role' because other employees are open to insistence on code compliance when it comes from male employees, but not from her. (*Id.* at 140.) She later notes her unwillingness to be 'put in her place' and continues:

> Otherwise, I am clear and direct when something needs to be made that way, which is unlike how "women are supposed to be". Rather, men can be clear and direct with zero consequence. We have staff (men) who get into public yelling matches with public officials and they are not put on a PIP, yet I am in this position for being just honest and direct (particularly in matters of safety and compliance).

(*Id.* at 144.) And she further writes that she feels she cannot ask for process clarification while a list of male names can. (*Id.*) Again, properly construed, this document is alleging disparate treatment based on gender.

The final email Plaintiff attaches as an exhibit to her TAC is an email she sent Aboumrad in which she calls him emotionally abusive and rhetorically asks him whether he has ever considered diversity training before telling him he holds himself and other men to a different standard. (*Id.* at 146-47.) Given the context of their prior

1   correspondence about the performance improvement plan, this email reinforces that

2   Plaintiff complained about disparate treatment based on her sex.

3       In sum, the only argument that NV Energy puts forward to dismiss this claim is

4   unpersuasive. The motion is accordingly denied to the extent it seeks dismissal of

5   Plaintiff's Claim 10 for retaliation for complaining about disparate treatment based on sex

6   against NV Energy.

7           **4.     Retaliation for Reporting Sexual Harassment Under Section
                       1981**
8

9       Plaintiff's Claim 11 is for retaliation under Section 1981, for terminating her for

10  reporting sexual harassment. (ECF No. 68 at 46-47.) NV Energy, Cannon, and Aboumrad

11  argue in pertinent part that this claim should be dismissed because Section 1981 only

12  prohibits retaliation motivated by racial discrimination, and her complaint that Adesina

13  sexually harassed her is based primarily on her sex, not her race. (ECF No. 68 at 19.)

14  Plaintiff does not respond to this argument. (ECF No. 80.) These Defendants note

15  Plaintiff's nonresponse in their reply, arguing that the Court should accordingly grant this

16  portion of their motion under LR 7-2(d). (ECF No. 84 at 12-13.) The Court agrees with

17  these Defendants.

18      Plaintiff's nonresponse to Defendants' motion as to this claim indicates her consent

19  that this claim should be dismissed. *See* LR 7-2(d). Defendants are also correct that

20  Section 1981 only "prohibits racial discrimination in the making and enforcement of private

21  contracts[.]" *Runyon v. McCrary*, 427 U.S. 160, 168 (1976). And while Adesina's alleged

22  sexual harassment of Plaintiff had a racial component, she has alleged retaliation in this

23  claim as based on her reporting sexual harassment. (ECF No 68 at 46-47.) Thus,

24  particularly given Plaintiff's nonresponse, Defendants' argument that she cannot state a

25  Section 1981 retaliation claim based on reporting sexual harassment appears correct.

26  Defendant NV Energy, Cannon, and Aboumrad's motion to dismiss Plaintiff's Claim 11,

27  for retaliation for reporting sexual harassment in violation of Section 1981, is granted.

28  ///

Because the Court agrees that Plaintiff's claims asserted against Cannon and Aboumrad should be dismissed and has found that only claims asserted against NV Energy are proceeding, the Court will dismiss Cannon and Aboumrad from this case.

## IV.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendants Stephanie Mullen and PUCN's motion to dismiss (ECF No. 69) the TAC is granted in part, and denied in part, as specified herein.

It is further ordered that Defendant Daniel Adesina's motion to dismiss (ECF No. 71) is granted in part, and denied in part, as specified herein.

It is further ordered that Defendants Nicholas Aboumrad, Douglas A. Cannon, and NV Energy's motion to dismiss (ECF No. 72) is granted in part, and denied in part, as specified herein.

It is further ordered that Defendants Stephanie Mullen, Douglas A. Cannon, and Nicholas Aboumrad are dismissed from this case.

It is further ordered that that the motion to strike a portion of Plaintiff's TAC contained within PUCN and Mullen's motion (ECF No. 69 at 23-24) is granted as specified herein.

The Clerk of Court is directed to strike the TAC. (ECF No. 68.)

It is further ordered that Plaintiff must file a fourth amended complaint consistent with this order, including with its ruling on the motion to strike, within 15 days.

DATED THIS 27th Day of November 2024.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE